UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ALLEN,<br><br>    Plaintiff,<br><br>  v.<br><br>STEPHANIE CLENDENIN, *et al.*,<br><br>    Defendants. | Case No. 1:23-cv-00921-EPG (PC)<br><br>ORDER DIRECING CLERK OF COURT TO ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED WITH PREJUDICE<br><br>(ECF No. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

    Plaintiff David Allen is a pre-adjudication civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff's complaint alleges that Defendants Stephanie Clendenin and Brandon Price, through their oversight of DSH-Coalinga where Plaintiff is a patient, have violated his Federal and California state constitutional rights by allowing certain patients at the hospital to engage in sexual activity while not allowing conjugal visits. (ECF No. 1).

    The Court previously screened the complaint and concluded that Plaintiff failed to state any cognizable claims. (ECF No. 6). The Court gave Plaintiff leave to file an amended complaint and, alternatively, gave him the option of standing on his complaint, subject to the Court issuing findings and recommendations to a district judge consistent with the screening

1

order. On September 19, 2023, Plaintiff filed a notice advising the Court that he wished to stand on his complaint. (ECF No. 7).

For the reasons set forth below, the Court recommends that this action be dismissed with prejudice. Plaintiff has fourteen days from the date of service of these findings and recommendations to file any objections.

## I. SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court screens the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).[1]

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that

---

[1] Plaintiff states that he is civilly detained under California's Sexually Violent Predators Act. (ECF No. 1, p. 6). Given this representation, the Court concludes that the screening requirements of 28 U.S.C. § 1915A, which govern "prisoners," do not apply here. *See Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000) (concluding that a person civilly committed under California's Sexually Violent Predators Act was not a "prisoner" under the Prison Litigation Reform Act).

*pro se* complaints should continue to be liberally construed after *Iqbal*).

**II.     SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff names two Defendants in this case: (1) Stephanie Clendenin, the Director the Department of State Hospitals; and (2) Brandon Price, the Executive Director at DSH-Coalinga. Plaintiff has been detained at DSH-Coalinga since 2007 and is awaiting adjudication under California's Sexually Violent Predator Act (SVPA) to determine whether he will be civilly committed as a sexually violent predator. DSH-Coalinga is an "all-male" psychiatric hospital with patients of various sexual orientations. Plaintiff "identifies himself as a heterosexual."[2] (ECF No. 1, p. 6).

In October 2021, Defendant Price implemented Administrative Directive No. 510, which provides guidelines regarding patients' expression of sexual behaviors. That directive, attached to Plaintiff's complaint, (*id.* at 67-74), purports to provide guidelines for sexual activity by patients at DSH-Coalinga to permit sexual activity except when such activity "is non-consensual, forced, coerced, or performed with a person who due to mental or physical disability is incapable of giving legal consent," (*id.* at 67). Plaintiff's complaint alleges that the Directive, in light of the fact that DSH-Coalinga has only male patients, discriminates against him as a heterosexual male.

Relatedly, Plaintiff challenges Administrative Directive No. 738 and Cal. Code Regs. tit. 9, § 4300, which states in relevant part that "no conjugal visits shall be allowed." (*Id.* at 76). Plaintiff alleges that the policy against conjugal visits was implemented "because security requirements place limits on the extent of physical contact between patients and their visitors." (*Id.* at 8). However, prisons in California permit conjugal visits to some inmates. Moreover, DSH-Coalinga rejected a proposal to place several trailers inside the hospital grounds to allow for conjugal visits in the same manner as other institutions.

Plaintiff claims that DSH-Coalinga's policy discriminates against him due to his sexual orientation and are improperly punitive.

---

[2] Minor alterations, such as changing capitalization, have been made to some of Plaintiff's quotations without indicating each change.

Plaintiff briefly references another directive in his complaint: "Under Administrative Directive § 558, patients are not provided with notice of any charge(s) or an investigative employee to assist patients that are mentally or intellectually challenged." (*Id.* at 8).

Based on these allegations, Plaintiff brings nine claims:

1. Violation of his substantive due process rights under the Fourteenth Amendment based on unconstitutional conditions of civil detention.
2. Violation of his substantive due process rights under the Fourteenth Amendment based on punitive punishment.
3. Violation of his procedural due process rights under the Fourteenth Amendment based the failure to provide adequate notice of charges or adequate assistance to mentally or intellectually challenged patients.
4. Violation of his right to equal protection under the Fourteenth Amendment based on the discrimination he faces because of his sexual orientation.
5. Violation of his right to be free from deliberate indifference to his rights (Plaintiff identifies no specific constitutional amendment) based generally on the alleged violations Defendants committed as described in the complaint.
6. Violation of Plaintiff's privacy rights under Article 1, § 1 of the California Constitution based on Plaintiff's denial of the opportunity to engage in sexual activity.
7. Violation of Plaintiff's substantive due process rights under Article, 1 § 7(a) of the California Constitution, based on Plaintiff's denial of the opportunity to engage in sexual activity.
8. Violation of Plaintiff's right to equal protection under Article 1, § 7(a) of the California Constitution based on the discrimination he faces because of his sexual orientation.
9. Violation of Plaintiff's right to be free from cruel and unusual punishment under Article 1, § 17 based on Plaintiff's denial of the opportunity to engage in sexual activity.

(*Id.* at 9-26).

As for relief, Plaintiff seeks over ten million dollars in monetary damages, declaratory relief, and injunctive relief.

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

4

action at law, suit in equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under § 1983 for the actions of their employees

under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal,* 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B.     General Overview of Plaintiff's Claims**

Plaintiff's nine claims generally stem from his allegations that: (1) he is denied conjugal visits while patients at DSH-Coalinga, which is all-male, are permitted to engage in sexual activity; and (2) there is an inadequate process to provide notice of charges or assistance to mentally or intellectually challenged patients. Within this framework, it is important to note Plaintiff's status as a pre-adjudication civil detainee—*i.e.*, he represents that he is currently being detained while awaiting trial to determine if he will be committed as a sexually violent predator under the SVPA. *See King v. Cnty. of Los Angeles*, 885 F.3d 548, 553 (9th Cir. 2018) ("Inmates held during the pendency of SVPA commitment proceedings are civil detainees."). Because Plaintiff is being detained civilly rather than being punished for a crime as a prisoner, the constitutional standards of the Fourteenth Amendment apply to him. *See Jones v. Blanas*,

393 F.3d 918, 931 (9th Cir. 2004) (noting that Fourteenth Amendment's standards, rather than Eighth Amendment's, apply to civil detainees).

Given the overlap in Plaintiff's purported claims, and his citation to certain inapplicable legal standards, the Court will look to the complaint, as a whole, in terms of Plaintiff's asserted constitutional violations to determine which allegations state a claim for relief. *See Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1009 (9th Cir. 2023) (noting that *pro se* complaints, especially those brought by confined persons alleging civil rights violations, are held to less stringent standards than pleadings drafted by lawyers).

### C.     Substantive Due Process

Plaintiff's complaint contains allegations that implicate his substantive due process rights under the Fourteenth Amendment. (*See, e.g.*, ECF No. 1, pp. 9-15). In relevant part, the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause protects both substantive rights (*i.e.*, substantive due process) and procedural rights (*i.e.*, procedural due process). *Zinermon v. Burch*, 494 U.S. 113, 125-126 (1990). Pertinent here are two liberty interests: (1) the right to enjoy intimate association; and (2) the right to be free from punitive conditions of confinement as a civil detainee.

Regarding the purported right to intimate association, it is well settled that there is no right to intimate association or sexual intercourse while confined by the government because confinement necessarily restricts the right to freely associate with society. The Ninth Circuit explained this as follows, albeit in the context of incarcerated prisoners:

> Incarceration, by its very nature, removes an inmate from society. *Pell,* 417 U.S. at 822–23, 94 S.Ct. 2800. A necessary corollary to this removal is the separation of the prisoner from his spouse, his loved ones, his friends, family, and children. *Cf. Montanye v. Haymes,* 427 U.S. 236, 242 n. 4, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (noting that among the hardships that may result from a prison transfer are separation of the inmate from home and family). Once released from confinement, an inmate "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). But not until then.

> During the period of confinement in prison, the right of intimate association, "a fundamental element of personal liberty," *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), is necessarily abridged. Intimate association protects the kinds of relationships "that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. . . ." *Id.* at 619, 104 S.Ct. 3244 (citations omitted). The loss of the right to intimate association is simply part and parcel of being imprisoned for conviction of a crime.
>
> "[M]any aspects of marriage that make it a basic civil right, such as cohabitation, sexual intercourse, and the bearing and rearing of children, are superseded by the fact of confinement." *Goodwin v. Turner,* 702 F.Supp. 1452, 1454 (W.D.Mo.1988). Thus, while the basic right to marry survives imprisonment, *Turner,* 482 U.S. at 96, 107 S.Ct. 2254, most of the attributes of marriage—cohabitation, physical intimacy, and bearing and raising children—do not. "Rights of marital privacy, like the right to marry and procreate, are necessarily and substantially abridged in a prison setting." *Hernandez v. Coughlin,* 18 F.3d 133, 137 (2d Cir.1994) (citing *Turner,* 482 U.S. at 95–96, 107 S.Ct. 2254). Incarceration is simply inconsistent with the vast majority of concomitants to marriage, privacy, and personal intimacy.
>
> . . . .
>
> "[I]ncarceration, by its very nature, deprives a convicted individual of the fundamental right to be free from physical restraint," and this "in turn encompasses and restricts other fundamental rights, such as the right to procreate." *State v. Oakley,* 245 Wis.2d 447, 629 N.W.2d 200, 209 (2001) (citing *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)).
>
> For example, it is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits. *See Kentucky Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (no due process right to unfettered visitation); *Block v. Rutherford,* 468 U.S. 576, 585–88, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984) (pretrial detainees have no constitutional due process right to contact visits); *Hernandez,* 18 F.3d at 137 (no constitutional right to conjugal visits); *Davis v. Carlson,* 837 F.2d 1318, 1319 (5th Cir.1988) (same); *Toussaint v. McCarthy,* 801 F.2d 1080, 1113–1114 (9th Cir.1986) (denial of contact visits does not violate Eighth Amendment).
>
> The fact that California prison officials may choose to permit some inmates the privilege of conjugal visits is simply irrelevant to whether there is a constitutional right to conjugal visits or a right to procreate while in prison.

*Gerber v. Hickman*, 291 F.3d 617, 620–622 (9th Cir. 2002) (footnote omitted); s*ee also Jones v. Nichols,* 639 F. App'x 433, 434 (9th Cir. 2016) ("The district court properly dismissed Jones's due process claim because Jones failed to allege facts sufficient to show that he had a constitutionally protected liberty interest in overnight family visits."); *Torricellas v. Poole*, 954

8

F.Supp. 1405, 1414 (C.D. Cal. 1997), *aff'd* (9th Cir. 1998) 141 F.3d 1179 ("Regarding plaintiff's claim of loss of a conjugal visit, it is clear that an inmate has no due process right under the Fourteenth Amendment to the Constitution to unrestricted visitations.").

Although *Gerber* concerned the rights of a convicted prisoner, the same holds true of detainees. Indeed, the Supreme Court has held that pretrial detainees have no right to contact visits at all, on the basis that the connection between limitations on contact visits and security was "too obvious to warrant extended discussion:"

> That there is a valid, rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant extended discussion. . . . Contact visits invite a host of security problems. They open the institution to the introduction of drugs, weapons, and other contraband. Visitors can easily conceal guns, knives, drugs, or other contraband in countless ways and pass them to an inmate unnoticed by even the most vigilant observers. And these items can readily be slipped from the clothing of an innocent child, or transferred by other visitors permitted close contact with inmates.
>
> Contact visitation poses other dangers for a detention facility, as well. Detainees—by definition persons unable to meet bail—often are awaiting trial for serious, violent offenses, and many have prior criminal convictions. Exposure of this type person to others, whether family, friends, or jail administrators, necessarily carries with it risks that the safety of innocent individuals will be jeopardized in various ways. . . . It is no answer, of course, that we deal here with restrictions on pretrial detainees rather than convicted criminals. For, as we observed in *Wolfish*, in this context, "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates." 441 U.S., at 546, n. 28, 99 S.Ct., at 1878, n. 28. Indeed, we said, "it may be that in certain circumstances [detainees] present a greater risk to jail security and order." *Ibid.*

*Block v. Rutherford,* 468 U.S. 576, 586-587 (1984). Similarly, in an unpublished case, the Ninth Circuit upheld dismissal of a claim for lack of conjugal visits brought by a married patient who was civilly committed pursuant to Washington's Sexually Violent Predator's Act because "the state's restriction on conjugal visits for SCC patients is rationally related to the legitimate objectives of security and treatment of civilly committed sex offenders." *See Turay v. Riveland,* 85 F.3d 638 (9th Cir. 1996) (unpublished).

Here, Plaintiff is being detained under the SVPA, which allows the State of California, after a probable cause finding and trial, to involuntarily commit a person convicted of certain

9

sex offenses when the person has a diagnosed mental disorder that makes them likely to reoffend. *See Jones*, 393 F.3d at 923 (providing overview of SVPA); Cal. Welf. & Inst. Code § 6600 *et seq.* There is similarly an obvious connection between security and a limitation on sexual activity with non-patient visitors. Accordingly, Plaintiff's claim for a violation of substantive due process based on DSH-Coalinga's prohibition on conjugal visits fails to state a claim.

For the same reasons, Plaintiff's claim that the lack of conjugal visits unconstitutionally subjects him to punishment fails. In upholding prohibitions on contact visits for pretrial detainees, the Supreme Court further explained:

> In addressing the particular challenges in *Wolfish*, we carefully outlined the principles to be applied in evaluating the constitutionality of conditions of pretrial detention. Specifically, we observed that "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.*, at 538, 99 S.Ct., at 1873 (citation omitted). Absent proof of intent to punish, we noted, this determination "generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Ibid.* (quoting *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644 (1963)). We concluded: "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." 441 U.S., at 539, 99 S.Ct., at 1874 (footnote and citation omitted).

*Block,* 468 U.S. at 584.

Nor does the fact that prisons in the California allow conjugal visits, in certain circumstances, change this result here.

> Since there is no constitutional right to conjugal visits while incarcerated, and there is no constitutional right to be free from prison transfers, there can be no right to be free from a prison transfer that subjects a prisoner to a loss of conjugal visits. *See Gerber,* 291 F.3d at 621. The analysis is not changed by plaintiff's contention that the California prison system created a liberty interest in his receiving conjugal visits by allowing him to earn them in the first place. *See Sandin,* 515 U.S. at 474, 483–84 (disapproving the use of state prison

> regulations to create due process entitlements, and holding that state-created interests are limited to those rare circumstances which "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Given that the regulation under which plaintiff received conjugal visits pre-conditioned those visits on security and space availability, and that a non-consensual transfer does not violate due process or equal protection (*Johnson v. Moore,* 948 F.2d 517, 519 (9th Cir.1991); *Stinson v. Nelson,* 525 F.2d 728, 730 (9th Cir.1975)), plaintiff's rights are not violated by being housed in a facility where he cannot now receive the conjugal visits he previously earned, which were always premised on availability.

*Bolton v. Smith*, No. CV 10-8176-JST SP, 2012 WL 1400061, at *8 (C.D. Cal. Mar. 1, 2012), *report and recommendation adopted*, No. CV 10-8176-JST SP, 2012 WL 1399961 (C.D. Cal. Apr. 16, 2012).

With these principles in mind, Plaintiff's claim fails because he has not alleged facts indicating that the limitation on conjugal visits was imposed for the purposes of punishment. Instead, Plaintiff relies on Administrative Directive No. 510, which notes the policy justification behind the limits on sexual activity and conjugal visits within DSH-Coalinga: "[T]he safety requirements in a maximum-security setting necessarily place limits on the opportunity the patients being served have to engage in sexual activity while in the hospital"; "Conjugal visits are not permitted at DSH-[Coalinga]. Security requirements necessarily place limits on the extent of physical contact permitted between the patients of DSH-[Coalinga] and their visitors." (ECF No. 1, pp. 7, 68, 69).

Accordingly, Plaintiff fails to state any claim against Defendants for substantive due process under the Fourteenth Amendment.

### D.     Related Claims

Many of Plaintiff's other legal claims stem from his allegations that the denial of conjugal visits violates his legal rights. However, these claims likewise fail.

#### 1.   Substantive Due Process – California Constitution Article 1, § 7(a)

Plaintiff relies on Article 1, § 7(a) of California's Constitution, which provides in relevant part as follows: "A person may not be deprived of life, liberty, or property without due process of law. . . ."

As for the similarities between the Due Process Clauses of the United States and California Constitutions, one court has noted as follows:

> Just like the U.S. Constitution, the California Constitution protects persons from deprivation of "life, liberty, or property without due process of law." Cal. Const. art. I, § 7(a). California's Due Process Clause is "identical in scope with the federal due process clause." *Owens v. City of Signal Hill*, 154 Cal.App.3d 123, 127 n. 2, 201 Cal.Rptr. 70 (1984); *Botello v. Morgan Hill Unified Sch. Dist.*, 2009 WL 3918930 (N.D.Cal. Nov. 18, 2009) (treating California Constitution's due process clause as identical to federal Constitutional due process protection for purposes of evaluating a "danger creation" cause of action).

*Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1116 (E.D. Cal. 2012).

Given the consistent interpretations of the Federal and California Due Process Clauses, the Court concludes that Plaintiff fails to state a substantive due process claim under the California Constitution for the reasons discussed in connection with his Federal claim.

### 2. Right to Privacy – California Constitution Article 1, § 1

Plaintiff similarly relies on Article 1, § 1 of California's Constitution, which provides as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

> To establish an invasion of privacy claim, a plaintiff must demonstrate three elements: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 39–40, 26 Cal.Rptr.2d 834, 865 P.2d 633 (1994). These elements are not a categorical test, but rather serve as threshold components of a valid claim to be used to "weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant." *Loder v. City of Glendale*, 14 Cal.4th 846, 893, 59 Cal.Rptr.2d 696, 927 P.2d 1200 (1997).
>
> . . . .
>
> [U]nder California law there are only two classes of legally protected privacy interests under the California Constitution: "interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." *Hill*, 7 Cal.4th at 35, 26 Cal.Rptr.2d 834, 865 P.2d 633. . . . California courts have discussed autonomy privacy in the

> context of cases alleging bodily autonomy. *See, e.g., Comm. To Defend Reprod. Rights v. Myers*, 29 Cal.3d 252, 275, 172 Cal.Rptr. 866, 625 P.2d 779 (1981) (noting there is a constitutional right to privacy in a woman's "personal bodily autonomy"); *Smith v. Fresno Irrigation Dist.*, 72 Cal.App.4th 147, 161, 84 Cal.Rptr.2d 775 (1999) (discussing autonomy privacy in the context of drug testing through use of a urine sample).

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037, 1039 (N.D. Cal. 2014).

To the extent that Plaintiff asserts a generalized privacy interest in the ability to decide to engage in sexual activity, he has failed to identify a legally protected privacy interest. "Although the state right of privacy has been held to be broader than the federal right (*Committee to Defend Reproductive Rights v. Myers* (1981) 29 Cal.3d 252, 281, 172 Cal. Rptr. 866, 625 P.2d 779), California courts construing article 1, section 1, have looked for guidance to federal precedents," including seeing "some relevance in a line of United States Supreme Court decisions that has recognized the sensitivity in terms of privacy interests of a person's sexual practices." *Urbaniak v. Newton*, 226 Cal. App. 3d 1128, 1136 (Ct. App. 1991). Importantly, relying on Federal law, the California Court of Appeals has recognized that "inmates have no constitutional right while incarcerated to contact or conjugal visits." *In re Espinoza*, 192 Cal. App. 4th 97, 107 (2011). While the Court recognizes that Plaintiff is a civil detainee, the same security interests apply to patients at DSH-Coalinga. Accordingly, Plaintiff fails to state a privacy claim under the California Constitution.

### 3. Deliberate Indifference

Plaintiff refers to Defendants' purported "deliberate indifference" to his rights in various claims and his fifth claim is labeled "42 U.S.C. § 1983—Deliberate Indifference," with references to his "punitive civil conditions of detention." (ECF No. 1, pp. 19-20). However, Plaintiff relies on an incorrect legal standard:

> Finally, we have held in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir.2003), that the Eighth Amendment's "deliberate indifference" standard of culpability does not apply in the context of an incapacitated criminal defendant's Fourteenth Amendment challenge to conditions of confinement. *Id.* at 1120-21. If an incapacitated criminal defendant need not prove "deliberate indifference" to state a substantive due process claim, then neither should a civil detainee, who retains greater liberty protections than his criminal counterpart. *Youngberg*, 457 U.S. at 321–24, 102 S.Ct. 2452.

13

*Jones*, 393 F.3d at 933.

As discussed above, the Court has applied, consistent with Ninth Circuit precedent, the substantive due process standards under the Fourteenth Amendment in evaluating Plaintiff's claims of punitive punishment. Accordingly, Plaintiff's claim against Defendants based on deliberate indifference fails to state a claim.

### 4. Cruel or Unusual Punishment – California Constitution Article 1, § 17

Lastly, Plaintiff cites Article 1, § 17 of California's Constitution, which provides as follows: "Cruel or unusual punishment may not be inflicted or excessive fines imposed."

However, similar to the Court's deliberate indifference analysis above, the standards regarding cruel and unusual punishment under the California Constitution do not apply to civil detainees. *People v. Chambless*, 74 Cal. App. 4th 773, 776 n.2 (1999) ("Moreover, it is well settled that double jeopardy and cruel and unusual punishment principles do not apply to civil commitment proceedings because they are not penal in nature."); *see People v. McDonald*, 214 Cal. App. 4th 1367, 1383 (2013) ("As the SVPA is not punitive, it does not violate the constitutional prohibition of cruel and/or unusual punishment."). Accordingly, Plaintiff fails to state a claim based on cruel or unusual punishment under the California Constitution.

### E. Equal Protection

Plaintiff's complaint contains allegations regarding his equal protection rights under the Fourteenth Amendment. (*See, e.g.*, ECF No. 1, pp. 9-19). The essence of Plaintiff's equal protection allegations is that Defendants deprive him of the ability to engage in sexual activity by prohibiting conjugal visits, while allowing patients to engage in sexual activity with other patients at the all-male facility.

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440. This "general rule gives

way, however, when a statute classifies [based on a protected class, such as] by race, alienage, or national origin," which leads to a higher level of scrutiny. *Id.* This is because such classifications "are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy." *Id.*

Here, Plaintiff asserts that he is being discriminate against "based on his sexual orientation," which he identifies as being "heterosexual." (ECF No. 1, pp. 6, 18). Sexual orientation is a protected class and "classifications on the basis of sexual orientation are subject to heightened scrutiny." *Latta v. Otter*, 771 F.3d 456, 468 (9th Cir. 2014).

> Analysis of an equal protection claim alleging an improper statutory classification involves two steps. Appellants must first show that the statute, either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group. . . . Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the groups is justified.

*United States v. Lopez-Flores*, 63 F.3d 1468, 1472 (9th Cir. 1995) (internal citations omitted).

As for different treatment among members, "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." "Where . . . the challenged governmental policy is 'facially neutral,' proof of disproportionate impact on an identifiable group, such as evidence of 'gross statistical disparities,' can satisfy the intent requirement where it tends to show that some invidious or discriminatory purpose underlies the policy." *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009). However, "it is the rare case where impact alone will be sufficient to invalidate a challenged government action." *Id.* Further, "[t]he groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. An equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (internal citations and quotation marks omitted).

However, the Court finds no equal protection claim here where the policy is neutral as to sexual orientation, and there are no allegations showing that the policy was intended to discriminate against persons based on their sexual orientation.

The policy itself does not differentiate between patients based on sexual orientation. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 533 (1993) ("To determine the object of a law, we must begin with its text, for the minimum requirement of neutrality is that a law not discriminate on its face."). Indeed, Directive No. 510 states "that the qualities and characteristics of opposite-sex relationships and of same-sex relationships are essentially similar. Both include the entire range of human experience from healthy to severe pathology." (ECF No. 1, p. 68). Further, it recognizes that "[a] patient's sexual orientation, values, and attitudes are to be recognized, understood, and respected." (*Id.*). Sexual activity among patients is permitted subject to certain limitations including that patients cannot engage in sexual relationships with staff, cannot engage in sexual activity against another person's will, and cannot engage in sexual activity without a sexual barrier device that could result in transmitting venereal disease. (*Id.*). Subject to such restrictions, patients can "engage in private, discreet autoerotic sexual activity" and "[p]atients residing on the same unit may visit other patients' rooms but must have approval from all occupants and staff." (*Id.* at 68, 69). Nothing in this language makes distinctions based on sexual orientation.

Similarly, Directive No. 738 states that "[n]o conjugal visits shall be allowed." (*Id.* at 79). It makes no distinction on the prohibition on conjugal visits based on sexual orientation. Thus, persons seeking sexual activity with same-sex non-patients are treated the same as persons seeking sexual activity with opposite-sex non-patents. Accordingly, neither Directive is facially discriminatory against "heterosexuals."

To the extent that Plaintiff claims that he is treated differently from same-sex couples in the facility, the Court finds that they are not similarly situated. The critical distinction between those engaged in permitted sexual activity at DSH-Coalinga and those who cannot is not their sexual orientation—it is whether they have consenting sexual partners who are also patients at the facility.

Moreover, looking beyond the facial neutrality of the policy, Plaintiff has not alleged that the policy against conjugal visits (for all patients) was implemented in order to discriminate against heterosexuals. Again, Plaintiff himself explains that the limitation on conjugal visits were motivated by DSH-Coalinga's legitimate security concerns. (*See, e.g.*, ECF No. 1, p. 69 – "Conjugal visits are not permitted at DSH-[Coalinga]. Security requirements necessarily place limits on the extent of physical contact permitted between the patients of DSH-[Coalinga] and their visitors."). Plaintiff provides no allegations that any Defendant is carrying out the Directives in a way to purposefully discriminate against "heterosexuals." And to the extent that Plaintiff argues that there is a disproportionate impact on "heterosexuals," this consequence does not demonstrate "some invidious or discriminatory purpose underlies the policy." *The Comm. Concerning Cmty. Improvement*, 583 F.3d at 703.

While Plaintiff does not have the ability to engage in all types of oppositive-sex sexual activity, that is simply the byproduct of his being detained in an all-male hospital—not that the Directives are being enforced differently for "heterosexual" patients. Accordingly, the Court concludes that Plaintiff fails to state any claim against Defendants for violating his equal protection rights under the Fourteenth Amendment.

### F. Equal Protection – California Constitution Article 1, § 7(a)

Plaintiff also cites Article 1, § 7(a) of the California Constitution,[3] which provides in relevant part as follows: "A person may not be . . . denied equal protection of the laws." Plaintiff generally indicates that this claim is based on the discrimination he faces because of his sexual orientation. (ECF No. 1, p. 25).

Like the Due Process Clauses of the United States and California Constitutions, the Equal Protection Clauses have likewise been construed similarly. *Sanchez*, 914 F. Supp. 2d at 1116. Accordingly, the Court concludes that Plaintiff fails to state an equal protection claim under the California Constitution for the reasons discussed in connection with his Federal

---

[3] Plaintiff actually cites Article 1, § 7(b). (ECF No. 1, p. 24). However, that provision relates to "privileges or immunities." Given Plaintiff's reference to equal protection, the Court assumes he means to rely on the Equal Protection Clause, which is contained in Article 1, § 7(a).

17

claim.

### G. Procedural Due Process

Citing the other component of due process, procedural due process, Plaintiff alleges as follows: "Defendant Price has failed to provide Plaintiff and those similarly situated with adequate notice of any charges or adequate assistance means of assistance for mentally or intellectually challenged patients." (ECF No. 1, p. 15).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Dash, Inc. v. Alcoholic Beverage Control Appeals Bd.*, 683 F.2d 1229, 1233 (9th Cir. 1982). A "procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest . . . ; and (2) a denial of adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). Regarding the second element, "[t]he essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (internal citation and quotations marks omitted). There need not be any single set of procedures to ensure due process—"[a]ll that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard . . . to insure that they are given a meaningful opportunity to present their case." *Id.* at 349 (internal citation and quotations marks omitted); *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (noting "there are no 'hard and fast' rules for determining the requisite timing and adequacy of pre- and post-deprivation procedures").

> [The] identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

As discussed above, Plaintiff is required to offer "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). However, Plaintiff does not identify any specific interest at stake. Moreover, although he refers to inadequate notice of charges and assistance to mentally or intellectually challenged patients, he has failed to explain how Defendant Price denied him procedural due process. For example, Plaintiff does not state that he himself was inadequately notified of a charge that resulted in some adverse action, and he has not explained how the notice of the charge was inadequate or how he was denied the opportunity to be heard.

Accordingly, the Court concludes that Plaintiff has failed to state a claim against Defendant Price based on the denial of his procedural due process rights under the Fourteenth Amendment.

## IV.   CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's complaint and concludes that he fails to state any cognizable claims. The Court previously provided Plaintiff with the applicable legal standards, explained why Plaintiff's complaint failed to state any claims, and gave Plaintiff leave to file an amended complaint. However, Plaintiff chose to stand on his complaint. Accordingly, the Court finds that granting further leave to amend would be futile.

Accordingly, IT IS ORDERED that the Clerk of Court is directed to assign a District Judge to this case.

Further, IT IS RECOMMENDED as follows:

1. This action be dismissed with prejudice; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v.*

*Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **September 22, 2023**              /s/ *Erica P. Grosjean*
                                           UNITED STATES MAGISTRATE JUDGE